# EXHIBIT "A" - TERMS AND CONDITIONS

In addition to the terms and conditions specified on the face of this Contract, including but not limited to the Scope of Work or Plans and Specifications, Which shall include any job description sheets or proposals, attached hereto and incorporated herein by reference for all purposes; Contractor and Owner shall be subject to and governed by the following terms and conditions.

1. Contractor shall commence the Work or Services within two (2) weeks from Owners execution of this Contract and shall perform the Work or Services in strict compliance with the terms of the Contract and Scope of Work or Plans and Specifications and with all applicable laws, ordinances and regulations. Contractor shall furnish skilled labor and adequate and suitable materials, equipment, tools, machinery, ladders, scaffolding, implements, cartage and anything else necessary or desirable for performance of the Work or Services, including any government license or permits. Contractor agrees to comply with all requirements of any public authority at Owners expense.

2. Contractor shall at all times have title to any and all Plans and Specifications furnished by it to Owner and intended for use in connection with this Contract.

3. Contractor warrants that the Work or Services shall be free from defects and workmanship and materials shall comply with the requirements of this Contract and conform to the Scope of Work or Plans and Specifications and shall be fit for the purpose intended in this Contract. Contractor also warrants that all equipment and materials used in the Work or Services, or placed permanently on the Work Site or Services Site or affixed permanently thereto in connection therewith will be new (unless otherwise specified in the Scope of Work or Plans and Specifications) of good quality, free form defects and in conformity with the Scope of Work or Plans and Specifications. All warranties shall run in favor of the Owner, their successors and their assigns.

4. The entire risk of loss from any cause whatsoever for the duration of the contract only, of any and all equipment and materials to be incorporated into the Work or Services, placed permanently on the Work or Services Site, or affixed permanently thereto or used in the Work or Services by contractor shall be borne solely by Contractor except that upon (i) incorporation or use of such equipment or materials or (ii) acceptance by Owner or Agent of such equipment and materials, the risk of loss of such incorporated or used and accepted equipment and materials shall shift to Owner. Contractor agrees that until such shifting of the risk of loss, the loss, damage or destruction of such equipment and materials or any part thereof shall not release Contractor from its full obligation to fully perform under this Contract.

5. Time is of the essence in the Contract. Contractor agrees to use its best efforts to complete this Work or Service within the Contract period or before the Completion Date except for items beyond the control of the Contractor. If Contractor has failed or refused to expeditiously proceed with and complete the Work or Services and so long as Owner is not in default of this contract, Owner may, at its option, terminate the whole or any part of this Contract, provided Owner gives Contractor thirty (30) days written notice of such termination to Contractor, listing the work to be performed and that Contractor has failed to perform, and may obtain services elsewhere and hold Contractor liable for the reasonable cost to complete this work. In such event Contractor shall still be paid for work performed.

6. Owner shall be informed, by physical inspection or otherwise, as to the progress of the Work or Services upon reasonable request.

7. Final payment by Owner, less any amounts required by law to be retained by Owner shall be due and payable upon substantial completion. Payment of a progress payment or lapse of time shall not alone constitute an acceptance of all or part of the Work or Services completed on the date of such payment or a waiver of any of Owners rights hereunder. The entire Work or Services is to be subject to inspection and final approval of Owner at such time that the Contractor claims that all of the Work or Services is completed.

8. Rejected materials and Work or Services shall be replaced or corrected or completed by Contractor in compliance with the Scope of Work or Plans and Specifications at Contractor's sole expense.

9. If during the course of the Work or Services or within one (1) year after the Owner accepts the Work or Services or any portion thereof or within such longer period of time as may be prescribed by law, any of the Work or Services is found to be defective, deficient, in breach of any warranty or warranties herein or fails in any other way to conform to this Contract and Scope of Work or Plans and Specifications, Contractor shall correct it promptly at its own expense after receipt of a written notice from Owner to do so. Owner shall give such notice promptly after discovery of the condition.

10. Contractor agrees to keep the Work Site or Services Site and adjoining ways free of waste material and rubbish and other debris caused by the Work or Services. Contractor further agrees to remove such waste materials, rubbish and debris, together with all tools, equipment, machinery and surplus materials upon termination of the Work or Services and to leave the Work Site or Services Site "broom clean" or its equivalent.

11. Owner will pay all sales, consumer, use and other similar taxes; required by law in connection with the Work or Services to be performed.

12. Contractor shall procure and maintain at its own expense Worker's Compensation Coverage, in the amounts required by statutes and comprehensive general liability insurance, in policy amounts acceptable to Owner and sufficient to cover injury, damage, loss to any person or property occurring on the Work Site or Services Site and sufficient to cover indemnification of Owner against any and all damage, loss, expenses, claims, suits or proceedings arising from same. Such insurance shall cover the period beginning on the effective date of this Contract and ending on the date of acceptance of the Work or Services by Owner. Each policy procured pursuant to this section shall provide that the insurance coverage set forth therein shall not be modified or canceled without giving Owner thirty (30) days advance notice thereof. All policies evidencing such insurance shall name Owner as additional insured. Contractor shall promptly submit to Owner certificates of such insurance for approval prior to commencing the Work or Services.

13. Contractor agrees to provide, after receipt of payment from Owner, releases from any or all sub-Contractors and suppliers, waiving any and all rights of lien they may have against the Owner for payment.

14. Contractor shall indemnify Owner against, and hold them harmless from, loss, expenses, payments (voluntary payments excluded), including but not limited to claims related to theft, injury or to death of persons, or damage to or destruction of property belonging to the Owner occurring by reason of gross Negligence of Contractor, its employees, or agents and arising out of or related to, the performance of this Contract or, in any manner arising from operations hereunder, including the use by Contractor of equipment furnished by Owner. Contractor's obligation hereunder to indemnify Owner shall be in addition to the liability imposed by law on Contractor on account of damage to property or personal injury, including death, arising through operations under this Contract.

15. Owner shall be entitled to withhold any payment to such extent as may, in its reasonable opinion, be necessary to protect itself against loss because of (i) defective work not remedied; (ii) third party claims filed in direct connection with this contract; (iii) Contractor's failure to make payments properly for labor, materials, or equipment provided Owner has paid Contractor for amounts then due; (iv) reasonable evidence that the Work or Services can not be completed by the Completion Date or during the Contract Period except for conditions beyond the control of the Contractor; or (vi) persistent failure to carry out the Work or Services in accordance with the Scope of Work or Plans and Specifications. Owner agrees to immediately pay Contractor any withheld amount immediately upon the correction of the item money was withheld for.

16. Contractor and or Owner shall be in default in the event it (i) files, or had filed against it, a petition under the Bankruptcy Act; (ii) makes a general assignment for the benefit of creditors; (iii) becomes Insolvent, or (iv) breaches any other provision of this Contract. Should it also be in default if it fails to provide properly skilled workmen or proper materials. In the event of default, Owner or Contractor may, without prejudice to any other right or remedy and after giving five (5) days written notice of its intention, terminate this Contract. If Owner has failed to pay amounts when due, in addition to any legal rights Contractor may have, Contractor may immediately stop all work until payment is received. The contract period will then be adjusted to avoid any penalty to the Contractor. Further, payment not received by the due date shall accrue interest from the date of the invoice at the maximum rate allowed by law.

17. Contractor shall not without prior written consent of Owner (i) assign this Contract or the performance of its obligations hereunder; (ii) delegate the performance of said obligations, or (iii) assign any moneys due or to become due to it hereunder. Contractor is an independent contractor and all persons employed to provide services hereunder are employees of Contractor and not of Owner.

18. All notices of any kind required or permitted hereunder shall be in writing and be effective commencing five (5) days after any such notice has been deposited in the united States mail, postage prepaid, certified, return receipt requested, addressed to the respective parties hereto at the addresses specified on the face hereof.

19. If a provision herein, or any portion thereof, is declared to be void or unenforceable, all of the remaining provisions hereof shall be fully effective and binding upon the parties hereto.

20. The rights and remedies of each party for the breach of any provisions hereof by either party shall be cumulative to the fullest extent permitted by law, and the exercise of one remedy shall not constitute a binding election or waiver by the other party of any other remedy.

PEN000287

21. All rights of the parties under this Contract shall be determined in accordance with the prevailing laws of the State of Michigan and suit by either party under this Contract must be instituted and tried in said State.

22. Each party agrees to indemnify the other party against all costs and expenses incurred in prosecuting any right, claim or action brought to enforce any legal right or any of the terms and conditions of this Contract or for the breach of any of the Covenants or terms of this Contract.

23. This Contract is intended to be the final and exclusive agreement between the parties hereto and supersedes any prior understandings or written or oral agreements between the parties relating to the subject matter of this Contract.

24. Any proposed changes in the Scope of Work or Plans and Specifications proposed materials substitutions or omissions affecting this Contract must be submitted by Contractor to Owner in the form of a Change Order describing such changes, substitutions or omissions. No such change, substitution or omission shall be commenced, initiated or undertaken prior to written approval of the Change Order thereof by Owner.

25. In the event that any job description sheets, proposals or other documents attached hereto as exhibits conflict with any or all of the terms and provisions of this Contract, the terms and provisions of this Contract shall control.

26. The term "Confidential Information" means all unpublished information obtained or received from Owner during the term of the Contract which relates to the Owner's research, development, manufacturing, or business affairs. The Contractor shall not disclose "confidential information" to any person, except to its employees and subcontractors and only to the extent that they require it in the performance of their work, during the term of this Contract and until otherwise authorized by Owner.

PEN000288

CONTRACTOR:

## ASHMARK CONSTRUCTION

5640 West Maple Road, Suite 300
West Bloomfield, MI 48322-3717

Richard Penington
31207 Foxboro Way
Beverly Hills, MI 48025

# SERVICE CONTRACT

All correspondence, invoices and shipments must refer to this contract number.

Contract Number: 21-873

This Contract covers the Work (herein called "Work" or "Services") described below.

The Work or Services will be performed at: Unit 197 @ M1 Concourse, Pontiac, MI (herein called the "Work Site" or "Services Site").

This Contract is subject to all conditions hereon and as shown on Exhibit "A".

1. Contractor will provide the Work and Services for the following described Plans and Specifications or Scope of Work:

   Scope of Work: M1 Garage Unit 197 Construction of Interior Build Out as per ASHMARK Construction proposal dated 11/19/2021.

   Plans and Specifications: Preliminary pricing Plans by Studio Detroit dated 10/1/2021

2. Contractor will complete the Work or Services on or before the Completion date, or during the Contract period below:

   Completion: As per attached preliminary schedule - unless project is delayed by reasons beyond the control of the contractor

   Contract date: 11/24/2021

3. In consideration for the performance of the Work or Services, Owner will pay to Contractor the following sums of money (the "Contract Price") as shown below or in an attached payment schedule.

   Contract Price: $ 1,827,522.95

   Progress Payment Schedule:
   15% down at Execution of Contract; Monthly billings based on percentage of completion.
   Payments to be made within (10) days of submission to Owner.

   Special Conditions:
   All terms and conditions on Exhibit "A" shall apply. This contract does not cover or address property conditions not specifically covered in the plans and specifications, which may result in additional charges to Owner.

NOTE: THIS CONTRACT MUST BE ACKNOWLEDGED BY EXECUTING AND RETURNING FULLY EXECUTED COPIES WITHIN TEN DAYS OF ISSUE DATE. THIS CONTRACT SHALL BE VALID WHEN SIGNED BY AUTHORIZED AGENT (S) OF CONTRACTOR.

ACCEPTED BY OWNER:

By: _____ Title: OWNER
    Signature

Date: November 24, 2021

CONTRACT ISSUED BY CONTRACTOR:

By: _____ Title: Managing Member
    Signature

Date: 11/29/21

EXHIBIT
7

## EXHIBIT "A" - TERMS AND CONDITIONS

In addition to the terms and conditions specified on the face of this Contract, including but not limited to the Scope of Work or Plans and Specifications. Which shall include any job description sheets or proposals, attached hereto and incorporated herein by reference for all purposes; Contractor and Owner shall be subject to and governed by the following terms and conditions.

1. Contractor shall commence the Work or Services within two (2) weeks execution of this Contract and shall perform the Work or Services in strict compliance with the terms of the Contract and Scope of Work or Plans and Specifications and with all applicable laws, ordinances and regulations. Contractor shall furnish skilled labor and adequate and suitable materials, equipment, tools, machinery, ladders, scaffolding, implements, cartage and anything else necessary or desirable for performance of the Work or Services, including any government license or permits. Contractor agrees to comply with all requirements of any public authority at Owners expense.

2. Contractor shall at all times have title to any and all Plans and Specifications furnished by it to Owner and intended for use in connection with this Contract.

3. Contractor warrants that the Work or Services shall be free from defects and workmanship and materials shall comply with the requirements of this Contract and conform to the Scope of Work or Plans and Specifications and shall be fit for the purpose intended in this Contract. Contractor also warrants that all equipment and materials used in the Work or Services, or placed permanently on the Work Site or Services Site or affixed permanently thereto in connection therewith will be new (unless otherwise specified in the Scope of Work or Plans and Specifications) of good quality, free from defects and in conformity with the Scope of Work or Plans and Specifications. All warranties shall run in favor of the Owner, their successors and their assigns.

4. The entire risk of loss from any cause whatsoever for the duration of the contract only, of any and all equipment and materials to be incorporated into the Work or Services, placed permanently on the Work Site or Services Site, or affixed permanently thereto or used in the Work or Services by contractor shall be borne solely by Contractor except that upon (i) incorporation or use of such equipment or materials or (ii) acceptance by Owner or Agent of such equipment and materials, the risk of loss of such incorporated or used and accepted equipment and materials shall shift to Owner. Contractor agrees that until such shifting of the risk of loss, the loss, damage or destruction of such equipment and materials or any part thereof shall not release Contractor from its full obligation to fully perform under this Contract.

5. Time is of the essence in the Contract. Contractor agrees to use its best efforts to complete this Work or Service within the Contract period or before the Completion Date except for items beyond the control of the Contractor. If Contractor has failed or refused to expeditiously proceed with and complete the Work or Services and so long as Owner is not in default of this contract, Owner may, at its option, terminate the whole or any part of this Contract, provided Owner gives Contractor thirty (30) days written notice of such termination to Contractor, listing the work to be performed and that Contractor has failed to perform, and may obtain services elsewhere and hold Contractor liable for the reasonable cost to complete this work. In such event Contractor shall still be paid for work performed.

6. Owner shall be informed, by physical inspection or otherwise, as to the progress of the Work or Services upon reasonable request.

7. Final payment by Owner, less any amounts required by law to be retained by Owner shall be due and payable upon substantial completion. Payment of a progress payment or lapse of time shall not alone constitute an acceptance of all or part of the Work or Services completed on the date of such payment or a waiver of any of Owners rights hereunder. The entire Work or Services is to be subject to inspection and final approval of Owner at such time that the Contractor claims that all of the Work or Services is completed.

8. Rejected materials and Work or Services shall be replaced or corrected or completed by Contractor in compliance with the Scope of Work or Plans and Specifications at Contractor's sole expense.

9. If during the course of the Work or Services or within one (1) year after the Owner accepts the Work or Services or any portion thereof or within such longer period of time as may be prescribed by law, any of the Work or Services is found to be defective, deficient, in breach of any warranty or warranties herein or fails in any other way to conform to this Contract and Scope of Work or Plans and Specifications, Contractor shall correct it promptly at its own expense after receipt of a written notice from Owner to do so. Owner shall give such notice promptly after discovery of the condition.

10. Contractor agrees to keep the Work Site or Services Site and adjoining ways free of waste material and rubbish and other debris caused by the Work or Services. Contractor further agrees to remove such waste materials, rubbish and debris, together with all tools, equipment, machinery and surplus materials upon termination of the Work or Services and to leave the Work Site or Services Site "broom clean" or its equivalent.

11. Owner will pay all sales, consumer, use and other similar taxes, required by law in connection with the Work or Services to be performed.

12. Contractor shall procure and maintain at his own expense Worker's Compensation Coverage, in the amounts required by statutes and comprehensive general liability insurance, in policy amounts acceptable to Owner and sufficient to cover injury, damage, loss to any person or property occurring on the Work Site or Services Site and sufficient to cover indemnification of Owner against any and all damage, loss, expenses, claims, suits or proceedings arising from same. Such insurance shall cover the period beginning on the effective date of this Contract and ending on the date of acceptance of the Work or Services by Owner. Each policy procured pursuant to this section shall provide that the insurance coverage set forth therein shall not be modified or canceled without giving Owner thirty (30) days advance notice thereof. All policies evidencing such insurance shall name Owner as additional insured. Contractor shall promptly submit to Owner certificates of such insurance for approval prior to commencing the Work or Services.

13. Contractor agrees to provide, after receipt of payment from Owner, releases from any or all sub-Contractors and suppliers, waiving any and all rights of lien they may have against the Owner for payment.

14. Contractor shall indemnify Owner against, and hold them harmless from, loss, expenses, payments (voluntary payments excluded), including but not limited to claims related to theft, injury or to death of persons, or damage to or destruction of property belonging to the Owner occurring by reason of any Negligence of Contractor, its employees, or agents and arising out of or related to, the performance of this Contract or, in any manner arising from operations hereunder, including the use by Contractor of equipment furnished by Owner. Contractor's obligation hereunder to indemnify Owner shall be in addition to the liability imposed by law on Contractor on account of damage to property or personal injury, including death, arising through operations under this Contract.

15. Owner shall be entitled to withhold any payment to such extent as may, in its reasonable opinion, be necessary to protect itself against loss because of (i) defective work not remedied; (ii) third party claims filed in direct connection with this contract; (iii) Contractor's failure to make payments properly for labor, materials, or equipment provided Owner has paid Contractor for amounts then due; (iv) reasonable evidence that the Work or Services can not be completed for the unpaid balance of the Contract Price ; (v) reasonable evidence that a substantial amount of the Work or Services will not be completed by the Completion Date or during the Contract Period except for conditions beyond the control of the Contractor; or (vi) permitted failure to carry out the Work or Services in accordance with the Scope of Work or Plans and Specifications. Owner agrees to immediately pay Contractor any withheld amount immediately upon the correction of the item/money was withheld for.

16. Contractor and or Owner shall be in default in the event it (i) files, or had filed against it, a petition under the Bankruptcy Act; (ii) makes a general assignment for the benefit of creditors; (iii) becomes Insolvent, or (iv) breaches any other provision of this Contract. Contractor shall also be in default if it fails to provide properly skilled workmen or proper materials. In the event of default, Owner or Contractor may, without prejudice to any other right or remedy and after giving five (5) days written notice of its intention, terminate this Contract. If Owner has failed to pay amounts when due, in addition to any legal rights Contractor may have, Contractor may immediately stop all work until payment is received. The contract period will then be adjusted to avoid any penalty to the Contractor. Further, payment not received by the due date shall accrue interest from the date of the invoice at the maximum rate allowed by law.

17. Contractor shall not without prior written consent of Owner (i) assign this Contract or the performance of its obligations hereunder; (ii) delegate the performance of said obligations, or (iii) assign any moneys due or to become due to it hereunder. Contractor is an independent contractor and all persons employed to provide services hereunder are employees of Contractor and not of Owner.

18. All notices of any kind required or permitted hereunder shall be in writing and be effective commencing five (5) days after any such notice has been deposited in the united States mail, postage prepaid, certified, return receipt requested, addressed to the respective parties hereto at the addresses specified on the face hereof.

19. If a provision herein, or any portion thereof, is declared to be void or unenforceable, all of the remaining provisions hereof shall be fully effective and binding upon the parties hereto.

20. The rights and remedies of each party for the breach of any provisions hereof by either party shall be cumulative to the fullest extent permitted by law, and the exercise of one remedy shall not constitute a binding election or waiver by the other party of any other remedy.

PEN000558

21. All rights of the parties under this Contract shall be determined in accordance with the prevailing laws of the State of Michigan and suit by either party under this Contract must be instituted and tried in said State.

22. Each party agrees to indemnify the other party against all costs and expenses incurred in prosecuting any right, claim or action brought to enforce any legal right or any of the terms and conditions of this Contract or for the breach of any of the Covenants or terms of this Contract.

23. This Contract is intended to be the final and exclusive agreement between the parties hereto and supersedes any prior understandings or written or oral agreements between the parties relating to the subject matter of this Contract.

24. Any proposed changes in the Scope of Work or Plans and Specifications proposed materials subsitutions or omissions affecting this Contract must be submitted by Contractor to Owner in the form of a Change Order describing such changes, substitutions or omissions. No such change, substitution or omission shall be commenced, initiated or undertaken prior to written approval of the Change Order thereof by Owner.

25. In the event that any job description sheets, proposals or other documents attached hereto as exhibits conflict with any or all of the terms and provisions of this Contract, the terms and provisions of this Contract shall control.

26. The term "Confidential Information" means all unpublished information obtained or received from Owner during the term of the Contract which relates to the Owner's research, development, manufacturing, or business affairs. The Contractor shall not disclose "confidential information" to any person, except to its employees and subcontractors and only to the extent that they require it in the performance of their work, during the term of this Contract and until otherwise authorized by Owner.

 **Gmail**

Richard Penington <richard.a.penington@gmail.com>

---

## Contract
1 message

---

**Martin Renel** <martin@ashmark.com>      Wed, Nov 24, 2021 at 12:42 PM
To: Richard Penington <richard.a.penington@gmail.com>
Cc: Torey Flanary <torey.flanary@gmail.com>, "Kevin J. Crosby (kevin@studio-detroit.com)" <kevin@studio-detroit.com>

Hi Richard,

I wanted to reiterate the basis on the contract we sent this morning. Since Kevin's team is still modifying the final plans, we know that there will be minor changes to finishes, design, etc. that will affect costs and final selections. We are flexible and know changes may occur. We will make sure to confirm any major material purchases prior to ordering and to check that final selections have been made.

Also, if you wish to view the single post lifts, we will reach out to the garage owner at M1 to see if we can have you look at it in person. Please let me know.

Thank you,

 **Martin Renel**
Managing Member

**A** 5640 West Maple Suite 300 West Bloomfield MI 48322
**P** (248)406-7335 **M** (248) 798-0045 **E** martin@ashmark.com **W** www.ashmark.com

 

---

 **image001.png**
21K


EXHIBIT
8

PEN000404

# ASHMARK Construction, LLC

5640 West Maple Road, STE #300, West Bloomfield, MI 48322

## EXTRA WORK AUTHORIZATION

E-mail completed form to
Martin Renel at
martin@ashmark.com and
Amy Boerkoel at
amy@ashmark.com

LOCATION: UNIT #197
M-1 Concourse

JOB #: 21-873
EWA #: 1
DATE: 12/23/2021

CHANGE DESCRIPTION:

ADD: Re-work foundation as required by new drawings dated 12/22/2021. Work includes additional concrete cutting, demolition, steel grade beam and concrete foundations as per revised plan. $ 10,655.00

ESTIMATED COST: $ 10,655.00

SUBCONTRACT/G.C. COST:
1. Work completed as described above $10,655.00
2.
3.
4.
5.
6.
7.
8.
9.
10.

SUBTOTAL $ 10,655.00
TAX
TOTAL $ 10,655.00

SCHEDULE IMPACT: 1 Week

SUBMITTED BY:

*Martin J. Renel*                                12/23/2021
GENERAL CONTRACTOR                DATE

APPROVED BY:

Architect

OWNER REPRESENTATIVE                12/24/2021
                                                         DATE

EXHIBIT
9

 **Gmail**                          Richard Penington <richard.a.penington@gmail.com>

---

## 197 Revised Pricing

1 message

---

**Martin Renel** <martin@ashmark.com>                              Wed, Jan 19, 2022 at 8:03 AM
To: "Richard.A.Penington@gmail.com" <richard.a.penington@gmail.com>
Cc: "torey.flanary@gmail.com" <torey.flanary@gmail.com>, "Kevin J. Crosby (kevin@studio-detroit.com)" <kevin@studio-detroit.com>, Amy Boerkoel <amy@ashmark.com>

Hi Richard,

Attached is the revised pricing encompassing the plan revisions as issued by Studio Detroit thru 1.6.22.  Cost associated on EWA#1 for the foundations are separated and not included in these costs.

The cost changes are summarized below:

- Structural Steel:                Added Stairs, the angle that going around the mezzanine doubled in size and its formed
- Specialty Metals:                Added ACM panels for mechanical room/OH coil door shroud. This is yet to be designed by Studio Detroit. – Bid allowance only.
- Drywall/Framing/Carpentry:    Material cost changes, Door & hardware specification changes.
- Glass:                        Added coatings to floors for scratch resistance, added details on sliding glass doors.
- Finishes:                    Material cost changes, Change carpet to resilient flooring.
- Lifts:                        Added Rotary lift, separated cost for Single post lift
- Mechanical:                    Material cost changes, added cost for relocating water line.
- Audio Visual:                Added video wall; added costs for additional TVs per revised plans
- Electrical:                    Pricing includes lighting specifications per plan, previous plans did not have fixtures specifications. Installation of lighting as required for Control4 system

Please let us know if this revised pricing is approved so we can release subcontractors for material ordering and scheduling.

Thank you,

   **Martin Renel**
Managing Member

---

A 5640 West Maple Suite 300 West Bloomfield MI 48322
P (248)406-7335 M (248) 798-0045 E martin@ashmark.com W www.ashmark.com

 



**2 attachments**



**image001.png**
21K

**Pricing Unit 197 1.17.22.pdf**
211K

PEN000403

25-46693-tjt   Doc 60-2   Filed 10/23/25   Entered 10/23/25 14:05:42   Page 13 of 25

# Construction Proposal

**ASHMARK CONSTRUCTION**

Construction Proposal for:



## *Unit 197*

## *Richard Penington*

**ASHMARK Construction, LLC**

5640 W. Maple
Suite 300
West Bloomfield, MI
Phone: (248) 855-1575
martin@ashmark.com



**ASHMARK CONSTRUCTION**

5640 W. Maple Rd. Suite 300
West Bloomfield, MI 48322
(248) 855-1575

## INTERIOR BUILDOUT PRICING

| Richard Penington | 11.19.21 |
|---|---|
| Submitted to | Date |
| M1 Concourse - UNIT 197 | Martin Renel |
| Job | Prepared by: |

### Interior Buildout

| Item | Cost | Comments |
|---|---|---|
| **DIV. 1 GENERAL REQUIREMENTS** | | |
| Permits & Fees | 7,500.00 | Bid allowance |
| On Site Supervision | 31,104.00 | On site project Manager |
| General Conditions | 12,096.00 | Debris removal, cleanup, Insurance |
| **METALS** | | |
| Stairs & Misc. Structural Steel | 57,139.00 | As per Revised plans |
| Specialty Metals | 66,917.00 | As per Revised plans |
| Specialty Metals – Mechanical/Coil Shrouds | 16,200.00 | Bid allowance |
| **CONCRETE** | | |
| Foundations | 31,104.00 | As per Revised plans |
| Slab saw cutting & Removal | 8,100.00 | As per Revised plans |
| **DRYWALL/FRAMING/CARPENTRY** | | |
| Framing & Drywall | 70,335.00 | As per Revised plans |
| Rough Carpentry | 5,227.00 | As per Revised plans |
| Doors, Frames & Hardware | 20,800.00 | As per Revised plans |
| **FEATURE WALL** | | |
| Feature wall GC fee & coordination | 37,500.00 | Coordination with Pedro |
| **MILLWORK** | | |
| Millwork package | 37,800.00 | Bid allowance, kitchen not included |
| Countertops | - | BY OWNER |
| **GLASS** | | |
| Glass & Glazing | 621,341.00 | As per Revised plans |
| **FINISHES** | | |
| Painting | 36,952.00 | As per Revised plans |
| Ceramic Tile | 75,709.00 | As per Revised plans |
| Marmoleom, Base & Carpet | 17,492.00 | As per Revised plans |
| Epoxy concrete Finish | 15,265.00 | As per Revised plans |
| **SPECIALTIES** | | |
| Appliances, Including Installation | - | BY OWNER |
| Toilet Accessories | 2,689.00 | As per Revised plans |
| Car Lift - Rotary | 8,629.00 | Added per Owner Request |
| Car Lifts - Single Post | 64,938.00 | As per Revised plans |
| **MECHANICAL** | | |
| HVAC | 16,254.00 | As per Revised plans |
| Roofing Allowance | 2,160.00 | As per Revised plans |
| Plumbing Labor | 55,783.00 | As per Revised plans, relocate water line |
| Plumbing Material | 46,672.00 | As per Revised plans |
| Fire Protection | 20,801.00 | As per Revised plans |
| **ELECTRICAL** | | |
| Audio/Video Systems | 371,804.00 | Includes Video Wall System |
| Electrical - Power, Distribution & Lighting | 761,210.00 | As per Revised plans |
| Subtotal | 2,519,521.00 | |
| GC Fee | 226,756.00 | |
| Contingency | 50,000.00 | |
| **Total** | **$ 2,796,277.00** | |

### Structural Mezzanine Quotation

| ITEM | Cost | Comments |
|---|---|---|
| **DIV. 1 GENERAL REQUIREMENTS** | | |
| Permits & Fees | 2,500.00 | Bid Allowance |
| Supervision | 3,500.00 | On site project Manager |
| General Conditions | 1,848.00 | Debris removal, cleanup, Insurance, |
| Temp. Safety Railings | 4,760.00 | Per OSHA |
| **DIV. 5 METALS** | | |
| Structural Steel mezzanine with (1) sets of stairs | 189,199.00 | Per structural Plan |
| T&G Plywood subfloor | - | Included |
| GC Fee | 18,169.00 | |
| Total | 219,976.00 | |
| **COMBINED TOTAL** | $ 3,016,253.00 | |

Respectfully submitted,

*Martin J. Renel*

Martin J. Renel, Managing Member



5640 W. Maple Rd. Suite 300
West Bloomfield, MI 48322
(248) 855-1575

## Project Qualifications:

1. This proposal does not include any changes that may arise from Pontiac Building dept.

2. This proposal is based upon revised plans Bulletins 1-6 as prepared by Studio Detroit Plans dated 1.6.22.

3. The following items are excluded from our Quote:

   Carbon Fiber feature wall & kitchen package
   Builders risk insurance policy
   Overtime or Phasing
   Furniture, garage tool storage
   Utility fees
   Appliances
   Countertops

4. The following allowances are included:

   Building permit: $7,500
   Millwork (not including kitchen): $37,800
   Specialty Metals - Mechanical/Coil Shrouds $16,200

5. Based upon fluctuating material changes, this pricing can only be held for (7) days .

6. Current Lift lead-times are 22-24 weeks.

7. Additional coordination and changes to light fixtures may occur due to compatibility to Control4 system.

 **Gmail**

Richard Penington <richard.a.penington@gmail.com>

## Unit 197 EWA# 2
1 message

**Martin Renel** <martin@ashmark.com>          Mon, Feb 28, 2022 at 4:19 PM
To: "Richard.A.Penington@gmail.com" <richard.a.penington@gmail.com>, "torey.flanary@gmail.com" <torey.flanary@gmail.com>
Cc: "Kevin J. Crosby (kevin@studio-detroit.com)" <kevin@studio-detroit.com>, Amy Boerkoel <amy@ashmark.com>

Hi Richard,

Please see the attached EWA for the changes per our pricing send on 2/23. Please review, sign and return to us when you are able.

Torey- As we discussed, we need this approval in order to procced with the material ordering and releasing of our trades in accordance with the revised plans.

Thank you,

 **Martin Renel**
Managing Member

**A** 5640 West Maple Suite 300 West Bloomfield MI 48322
**P** (248)406-7335 **M** (248) 798-0045 **E** martin@ashmark.com **W** www.ashmark.com

 

---

**2 attachments**

 image001.png
21K

 EWA #2.pdf
30K


EXHIBIT

PEN000525

# ASHMARK Construction, LLC

E-mail completed form to Martin Renel at martin@ashmark.com and Amy Boerkoel at amy@ashmark.com

5640 West Maple Road, STE #300, West Bloomfield, MI 48322

## EXTRA WORK AUTHORIZATION

| | | |
|---|---|---|
| LOCATION: | UNIT #197 | JOB #: 21-873 |
| | M-1 Concourse | EWA #: 2 |
| CHANGE DESCRIPTION: | | DATE: 2/28/2022 |

| Cost difference from Original Contract and pricing including Bulletins 1-7 | $ 803,772.06 |
|---|---|

**ESTIMATED COST:** $ 803,772.06

SUBCONTRACT/G.C. COST:

| | | |
|---|---|---|
| 1 | Work completed as described above | $803,772.06 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| | SUBTOTAL | $ 803,772.06 |
| | TAX | |
| | TOTAL | $ 803,772.06 |

SCHEDULE IMPACT: TBD

SUBMITTED BY:

*Martin J. Renel*                    2/28/2022

GENERAL CONTRACTOR          DATE

APPROVED BY:

_____

Architect

_____

OWNER REPRESENTATIVE          DATE

PEN000397

**Subject:** RE: with out your fee
**Date:** Tuesday, March 8, 2022 at 2:20:00 PM Eastern Standard Time
**From:** Jacob Fritts
**To:** Martin Renel
**CC:** Amy Boerkoel
**Attachments:** Quote-22-0068.pdf, Quote-22-0672.pdf

**JACOB FRITTS | Senior Account Executive**

**DISPLAY GROUP | 6235 Concord Ave., Detroit, MI 48211**
IPhone 313 938 9943 [call or text]

**DISPLAY GROUP FAMILY OF COMPANIES**
DG Events | AVL-Creative | DG-3D | Bldg22 | Mandell Display Design

*Nothing in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.*

*Confidentiality Note: This message is intended only for the person or entity to which it is addressed. It may contain confidential and/or privileged material. Any review, transmission, dissemination or other use, or taking of any action in reliance upon this message by persons or entities other than the intended recipient is prohibited and may be unlawful. If you received this message in error, please contact the sender and delete it from your computer.*

**From:** Jacob Fritts
**Sent:** Tuesday, March 8, 2022 1:10 PM
**To:** Martin Renel <martin@ashmark.com>
**Cc:** Amy Boerkoel <amy@ashmark.com>
**Subject:** with out your fee

**JACOB FRITTS | Senior Account Executive**

**DISPLAY GROUP | 6235 Concord Ave., Detroit, MI 48211**
IPhone 313 938 9943 [call or text]

**DISPLAY GROUP FAMILY OF COMPANIES**
DG Events | AVL-Creative | DG-3D | Bldg22 | Mandell Display Design

*Nothing in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.*

*Confidentiality Note: This message is intended only for the person or entity to which it is addressed. It may contain confidential and/or privileged material. Any review, transmission, dissemination or other use, or taking of any action in reliance upon this message by persons or entities other than the intended recipient is prohibited and may be unlawful. If you received this message in error, please contact the sender and delete it from your computer.*

**From:** Jacob Fritts
**Sent:** Tuesday, March 8, 2022 1:09 PM
**To:** Martin Renel <martin@ashmark.com>
**Cc:** Amy Boerkoel <amy@ashmark.com>
**Subject:** with your fee



EXHIBIT

12

Page 1 of 2

**JACOB FRITTS |** Senior Account Executive

**DISPLAY GROUP |** 6235 Concord Ave., Detroit, MI 48211
IPhone 313 938 9943 [call or text]

**DISPLAY GROUP FAMILY OF COMPANIES**
DG Events | AVL-Creative | DG-3D | Bldg22 | Mandell Display Design

Nothing in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

Confidentiality Note: This message is intended only for the person or entity to which it is addressed. It may contain confidential and/or privileged material. Any review, transmission, dissemination or other use, or taking of any action in reliance upon this message by persons or entities other than the intended recipient is prohibited and may be unlawful. If you received this message in error, please contact the sender and delete it from your computer.



6235 Concord Ave.
Detroit, MI 48211
(313) 865-9344
dg-3d.com

# Contract

StudioDetroit_PenningtonAV_M1_03-01-22

| **Client** | **Venue / Site** |
|---|---|
| Studio Detroit<br>Kevin Crosby<br>2111 Woodward Ave STE. 1001<br>DETROIT MI 48201<br>Phone: 313-909-3607 | |

| Account Manager | Project Manager | Warehouse | Terms | Tax Rule |
|---|---|---|---|---|
| Jacob Fritts | | Detroit | | Michigan Sales Tax |

| Customer PO | Load In | Load Out | Discount |
|---|---|---|---|
| | 3/31/2022 12:00 AM | 3/31/2022 12:00 AM | |

| Qty. | Description | Note | Discount | Price | Price Ext. |
|---|---|---|---|---|---|
| **WIFI Network (Small (<2500sqft)** | | | | | |
| 1 | Arris Surfboard SB8200 - 10 Gig Modem | | | 245.75 | 245.75 |
| 1 | NET110 SW24 Network Switch (Includes Rackmount and Cloud Management) | | | 431.34 | 431.34 |
| 1 | NET-RT-310-OVRC | | | 466.83 | 466.83 |
| | This Total is inclusive of mesh system wifi coverage for the whole unit. Wired connections ran to all stationary units. Cloud management and support. Option to add wifi ports throughout the unit. Frequent firmware updates and aggressive firewall protection and a secure guest network. | | | | |
| | | | WIFI Network (Small (<2500sqft): | | $1,143.92 |
| **Equipment Rack Power** | | | | | |
| 1 | RACK SYSTEMS - LR-27R -27 Space(wire management included) | | | 875.00 | 875.00 |
| 2 | WATT BOX - PWR-6 - Surge Protector | | | 57.33 | 114.66 |
| 1 | WATT BOX - WP-800-IPVM-6 IP Surge Protector | | | 525.46 | 525.46 |
| | | | Equipment Rack Power: | | $1,515.12 |
| **Control4 Controller** | | | | | |
| 1 | CONTROL4-8" T4 Portable - Touchscreen w/ 4 programmable hard keys | | | 1,228.50 | 1,228.50 |
| 1 | CONTROL4 - EA-5 - Home Controller | | | 2,689.83 | 2,689.83 |
| 6 | CONTROL4 -SR-260 - Handheld System Remote | | | 257.40 | 1,544.40 |
| | | | Control4 Controller: | | $5,462.73 |
| **Audio System** | | | | | |
| 10 | AUDIO L/R Interconnect Cable | | | 26.32 | 263.20 |
| 1 | CONTROL4 - KP-Config - Keypad | | | 235.00 | 235.00 |
| 1 | CONTROL4 - TRIAD 16X16 MATRIX - 16 Audio Matrix | | | 2,574.39 | 2,574.39 |
| 1 | CONTROL4 - TRIAD 8 Zone AMP - 16 Channel Amp | | | 1,987.83 | 1,987.83 |
| 8 | TRIAD - IC TS-83 IN-CEILING Speaker | | | 466.83 | 3,734.64 |
| | | | Audio System: | | $8,795.06 |
| **Surveillance** | | | | | |
| 1 | NET POE - POE Injector | | | 65.00 | 65.00 |
| 1 | Chime Doorbell | | | 359.10 | 359.10 |
| 7 | WIREPATH - LUM-310-IP - Outdoor Camera | | | 438.65 | 3,070.55 |
| 1 | 8 CAM Network Recorder | | | 2,045.16 | 2,045.16 |
| | | | Surveillance: | | $5,539.81 |

| Qty. | Description | Note | Discount | Price | Price Ext. |
|------|-------------|------|----------|-------|-----------|
| Video | | | | | |
| 7 | RAZOR Thin .7" TV Mount | | | 232.83 | 1,629.81 |
| 1 | TV1 | | | 2,500.00 | 2,500.00 |
| 0 | TV 2 | | | 1,250.00 | 0.00 |
| 0 | TV 3 | | | 1,600.00 | 0.00 |
| 1 | TV 4 | | | 3,200.00 | 3,200.00 |
| 1 | TV 5 | | | 1,500.00 | 1,500.00 |
| 1 | TV 6 | | | 1,600.00 | 1,600.00 |
| 2 | TV 7 | | | 3,100.00 | 6,200.00 |
| 1 | TV 8 | | | 14,999.00 | 14,999.00 |
| | Above price is inclusive of purchase, installation, data supply and configuration. | | | | |
| 0 | TV 9 * Excludes ceiling mount until further design work is approved | | | 2,500.00 | 0.00 |
| | | | | Video: | $31,628.81 |

| | |
|---|---|
| Subtotal: | $54,085.45 |
| Sales Tax: | $3,245.13 |
| Total: | $57,330.58 |
| Total Applied Payments: | $0.00 |
| Balance Due: | $57,330.58 |

DISCLAIMER:

Quote price is good for 30 days.
A covered van or box truck is required for all customer pickups.
Open pick up trucks and cars are not allowed.
Imposed union labor not included in price of quote.
Credit card fees may apply.



6235 Concord Ave.
Detroit, MI 48211
(313) 394-1333
avl-c.com

# Quote

StudioDetroit_PenningtonAVWiringInstallation_M1Concourse_6-1-22

| Client | Venue / Site |
|---|---|
| Studio Detroit<br>Kevin Crosby<br>2111 Woodward Ave STE. 1001<br>DETROIT MI 48201<br>Phone: 313-909-3607 | |

| Account Manager | Project Manager | Warehouse | Terms | Tax Rule |
|---|---|---|---|---|
| Jacob Frilts | | Detroit | | Michigan Sales Tax |

| Customer PO | Load In | Load Out | Discount |
|---|---|---|---|
| | | | |

| Qty. | Description | Note | Discount | Price | Price Ext. |
|---|---|---|---|---|---|
| 1 | Installation and Programming Labor | | | 1,651.51 | 1,651.51 |
| 6 | HDMI Kit | | | 350.00 | 2,100.00 |
| 3 | EERO - EERO PRO 6 Wifi | | | 267.93 | 803.79 |
| 12 | Inwall Cabling | | | 25.00 | 300.00 |
| 20 | Cat5E Cables w/ RJ45 Connectors | | | 5.00 | 100.00 |
| 7 | OPT COAX - Toslink | | | 55.00 | 385.00 |

DISCLAIMER:

Quote price is good for 30 days.
A covered van or box truck is required for all customer pickups.
Open pick up trucks and cars are not allowed.
Imposed union labor not included in price of quote.
Credit card fees may apply.

| | |
|---|---|
| Subtotal: | $5,340.30 |
| Rental Surcharge: | $106.81 |
| Sales Tax: | $326.83 |
| Total: | $5,773.94 |
| Total Applied Payments: | $0.00 |
| Balance Due: | $5,773.94 |