I am also very disappointed in the complete disregard for the budget I gave the team. We are tracking around 30% above the budget. Studio Detroit had submitted an alternate for the Carbon Fiber pricing which would have saved over 600K. We provided cost savings for cloud lighting which saved approx. 200K, both of these cost saving ideas were dismissed by you. As stated, we are open to work with the architects to make changes to the design as needed for value engineering, and one of our priories going forwards will be to guide you in controlling your budget.

I am very open and transparent and expect the same from vendors. Your proposal indicated that Ashmark was making 9% as a general contractor. I was shocked to find out that Ashmark was marking up other vendors' Invoices by 10% and then marking this mark-up another 9%. My calculation shows Ashmark's actual General Contractor fee is close to 30% of the project cost and a $31K on-site project manager. This fee is significantly above industry norms and not acceptable. The pricing we submitted initially, including all the items above, to you was approved without any issues or comments. All pricing properly reflects costs and profit to the subcontractors and ourselves as it relates to this project. We would appreciate it if you would raise any and all concerns regarding pricing with me before approving same. As I am sure you understand the only practical way to conduct business is to approve pricing in advance and to accept that pricing once it has been agreed upon.

These excessive Ashmark expenses lead me to believe I am being taken advantage of. Because of this feeling, I felt compelled to do a deep dive into this project and all associated costs. Our pricing is not excessive, and I would repeat the statements above. I am not sure what you mean when you use the phrase "deep dive", but I would repeat my comments at the beginning of my response and request that you respect my business relationships with my subcontractors. Of course, we are always available with regards to our clients in respect of their individual project, the budget, and the costs that we are charging directly to them.

I was also surprised to find out from some vendors that they usually deal directly with the owner and do not go through Ashmark. This is not the case, our projects we complete at M1 concourse are turnkey, and all the subcontractors deal directly with us on a lump sum construction budget contract.

I recently found out that if I did not pay a down payment for the glass, the price would increase by $90,000. Ashmark did not make me aware of this significant increase. I spoke to Torey about this on multiple occasions, in fact, we had the deadline for the price increase extended (1) week.

I do not understand the recent Extra Work Authorization for $124,378.64. See attached side by side comparison to the original budget pricing, showing the changes.

At this time, I have lost confidence in Ashmark to complete the construction of unit 197. We have every intention of working together with you and our Team to make this project better than you could hope for or imagine. I hope that this response has renewed your confidence in Ashmark to complete the contract in a satisfactory manner. We have successfully completed over fifty M1 units without any contractual issues and it is our intention to maintain this record.

PEN000449

I am looking for your help restoring my confidence in Ashmark and addressing the concerns outlined above.  I hope that my response to you has satisfied your concerns.  We must work together with the appropriate respect and boundaries appropriate to the contract and we look forward to delivering a unit in accordance with your specifications and budget for you to enjoy going forwards.  Please confirm in writing that you are satisfied with this response and that we are moving forward with this project.

Thank you,


Thanks,


Richard Penington

Richard.A.Penington@gmail.com

(248) 240-1047



On Fri, Mar 18, 2022 at 6:27 AM Martin Renel <martin@ashmark.com> wrote:

Richard,


We submitted, per your request, a phased down pricing eliminating all finishes last week.   We did not receive a response on this pricing; and as per my email on Monday, the schedule update was predicated on approval of the changes you and your designer have made to the plans on the (7) bulletins which have been issued.   When we inquired about the lack of response, we received a delayed response from Torey.   During this delay, Torey reached out to our subcontractors and their suppliers asking for information without our consent or direction.   As you are aware, we have a lump sum GC contractual agreement which allows for written changes over the course of the project.   Of the plan changes issued since December (Bulletins 4-7) - we submitted (6) pricing variations over 3 months, none of which have been approved.   As we discussed on numerous occasions; we contractually cannot proceed with changes on Plumbing, Electrical, AV, Steel, Glass, Lifts, and Finishes, etc. without your written approval.   Until the latest pricing changes are approved; it will result in a delay since these affect all aspects of our construction.


We have repeatedly asked for communication to improve with the team you assembled of Architects, Designers, Pedro, and yourself.   As we stated in our conference call on March 7th, Studio Detroit's Team and our Team are committed to working together harmoniously on this project.  This has not happened. Instead, communications through Torey have created a contentious atmosphere.   This helps no one.


We remain committed to working together and hope your team is willing to do so as well.   We would like to have the changes approved so we can proceed with scheduling and ordering of the changes described above.


Regards,

25-46693-tjt    Doc 60-4    Filed 10/23/25    Entered 10/23/25 14:05:42    Page 2 of 25


**Martin Renel**
Managing Member

**A** 5640 West Maple Suite 300 West Bloomfield MI 48322
**P** (248)406-7335 **M** (248) 798-0045 **E** martin@ashmark.com **W** www.ashmark.com

 

---

**3 attachments**

 image001.png
21K

 image003.png
27K

image005.png
45K

ASHMARK Construction, LLC

5640 West Maple Road
Suite 300
West Bloomfield, MI 48322

**PAID**
**09/27/2021**

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/23/2021 | 21-873-01 |

| Bill To |
|---------|
| Richard Penington |

| P.O. No. | Project |
|----------|---------|
|          |         |

| Description | Amount |
|-------------|--------|
| Original Contract-Mezzanine @ M1 Concourse Unit 197 | 109,988.00 |

**EXHIBIT**

**14**

| | |
|---|---|
| **Total** | $109,988.00 |
| **Payments/Credits** | -$109,988.00 |
| **Balance Due** | $0.00 |

ASHMARK Construction, LLC

5640 West Maple Road
Suite 300
West Bloomfield, MI 48322

**PAID**
**11/29/2021**

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/24/2021 | 21-873-IBO1 |

| Bill To |
|---------|
| Richard Penington |
| Interior Build Out |

| | P.O. No. | Project |
|--|----------|---------|

| Description | Amount |
|-------------|--------|
| Original Contract for Interior Build-Out | 274,128.45 |

**EXHIBIT**
**15**

| | |
|--|--|
| **Total** | $274,128.45 |
| **Payments/Credits** | -$274,128.45 |
| **Balance Due** | $0.00 |

ASHMARK Construction, LLC

5640 West Maple Road
Suite 300
West Bloomfield, MI  48322

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/25/2022 | 21-873-02 |

| Bill To |
|---------|
| Richard Penington |

| P.O. No. | Project |
|----------|---------|
|          |         |

| Description | Amount |
|-------------|--------|
| Original Contract-Mezzanine @ M1 Concourse Unit 197 | 109,988.00 |
| EWA# 1: Re-work foundation as required by new plans dated 12/22/2021 | 10,655.00 |

**EXHIBIT**

_16_

| | |
|---|---|
| **Total** | $120,643.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $120,643.00 |

 Gmail                          Richard Penington <richard.a.penington@gmail.com>

---

**RE: M1C- 197 Apex - temperature alarm**
1 message

---

**Martin Renel** <martin@ashmark.com>                    Tue, ==Mar 29, 2022== at 8:33 AM
To: Richard Penington <richard.a.penington@gmail.com>

Hi Richard,

Yes, ==we were bringing in and installing the angle iron on mezzanine.== It is very cold here today; the door is now shut and should not be an issue.

 **Martin Renel**
248-406-7335

**From:** Richard Penington <richard.a.penington@gmail.com>
**Sent:** Tuesday, March 29, 2022 11:28 AM
**To:** Martin Renel <martin@ashmark.com>
**Subject:** Fwd: M1C- 197 Apex - temperature alarm

Martin,

The garage just received a temperature alarm.

Is someone working at the garage?

Thanks,

Richard Penington

Richard.A.Penington@gmail.com

(248) 240-1047

EXHIBIT

**17**

PEN000462

---------- Forwarded message ----------
From: **Carly Schmeling** <carly@inrhodes.com>
Date: Tue, Mar 29, 2022 at 6:37 AM
Subject: M1C- 197 Apex - temperature alarm
To: Richard Penington <richard.a.penington@gmail.com>

Good Morning!

Our office just received a call from the emergency center that the temperature in your garage is below a certain degree. If you could, please visit your garage and check it out to make sure everything is alright as well as adjust the temperature to reflect the temperature to be above 60 degrees at all times.

**\*\*Please confirm receipt of this email so we can get this issue resolved as soon as possible.** 😊

Thank you!

Carly Schmeling

Assistant Community Association Manager

2391 Pontiac Rd, Auburn Hills MI 48326

Office (248) 652-8221 | Direct (248) 652-8221 Ext. 128

Toll Free (800) 300-5624 | Fax (248) 652-0662

www.inrhodes.com



 **image001.png**
21K



**Dykema Gossett PLLC**
400 Renaissance Center
Detroit, MI 48243
WWW.DYKEMA.COM
Tel: (313) 568-6800
Fax: (313) 568-6893

**James R. Case**
Direct Dial: (313) 568-6507
Direct Fax: (888) 410-2576
Email: JCase@dykema.com

April 12, 2022                      **VIA EMAIL AND U.S. MAIL**

Martin Renel
ASHMARK CONSTRUCTION
5640 West Maple, Suite 300
West Bloomfield, MI 48322

Re:    M1 Garage Unit 197 Construction Buildout

Dear Mr. Renel:

This firm represents Richard Penington, the Owner of the referenced Project. Mr. Penington has expressed deep dissatisfaction with recent developments on the Project. This dissatisfaction comes from your refusal to provide him with the basis, and in many instances the actual, quotes from subcontractors and suppliers regarding changed work and your attempt to mark-up subcontractor and supplier quotes far beyond industry norm. In addition to your General Contractor fees, Mr. Penington has discovered your total mark-ups approach twenty-six percent (26%).

Your actions (or inactions) have led to a delay in issuance of Extra Work Authorizations for additional work, causing a severe delay in completing the Project. In sum and substance, Mr. Penington has lost confidence in your ability to deal with him in good faith and complete the Project on budget within a reasonable time frame.

As such, we have been authorized by Mr. Penington to advise you that this letter shall constitute notice of termination of your contract. Mr. Penington has also informed us to notify you that he does intend to pay for work and costs that you have incurred to date with corresponding documentation. Toward that end, we request that you provide Mr. Penington with an accounting of the work performed so a determination can be made in regard to actual costs that have been incurred. Mr. Penington has assured us he would like to finalize this matter in a timely and professional manner.

Very truly yours,

DYKEMA GOSSETT PLLC

James R. Case

cc:    Richard Penington

**EXHIBIT**

18

California | Illinois | Michigan | Minnesota | Texas | Washington, D.C. | Wisconsin

4858-8499-7147 v.1

# MARK D. EVANS, P.C.

### Attorney & Counselor
2232 South Main St. #272
Ann Arbor, MI 48103
Phone (734) 944-2300

Email: mdevanslaw@aol.com
mevans@markdevanslaw.com

April 18, 2022

VIA E-MAIL AND REGULAR MAIL

James R. Case
DYKEMA GOSSETT, PLLC
400 Renaissance Center
Detroit, MI 48243

Re:     Your Client:   Richard Penington
        Project:  M1 Concourse Unit 197 Construction Build out

Mr. Case:

I represent Ashmark Construction Co. LLC ("Ashmark") and am responding to your April 12, 2022 correspondence notifying Ashmark that the Owner, Richard Penington, terminated the contract between the parties.

Ashmark strongly disagrees with and disputes his characterization of the facts leading to Mr. Penington's unilateral decision to terminate the contract. If it becomes necessary in the future, Ashmark is prepared to address each of the points made in your correspondence as forming the basis for Mr. Penington's action.

Given Mr. Penington's termination of the contract, Ashmark and its subcontractors have removed their tools and equipment from the property. Ashmark has secured the property and installed safety measures to minimize the risk of injury to others. Neither Ashmark nor its subcontractors will be at the subject property in the future to protect it, given Mr. Pennington's termination.

The key to the property is available at Ashmark's offices for Mr. Penington or his designated representative to pick up.

I have requested that Ashmark put together an accounting to represent what was owed. Your correspondence references that Mr. Penington requests that he be



EXHIBIT
19

provided *"... with an accounting of the work performed so a determination can be made in regard to the actual costs that have been incurred."* Please keep in mind that this was not a cost plus contract and that Ashmark was, until terminated, fully prepared to complete its obligations under the contract.

It is also Ashmark's desire to finalize this matter in a timely and professional manner.

Very truly yours,

MARK D. EVANS, P.C.

Mark D. Evans

Cc:  Ashmark Construction, LLC


EXHIBIT
20

**Pemlington Analysis**

| Div. | Subcontractor | Description | Input Value Per | Est. % Complete | Est. Value Completed | Amount paid Draft #2 Sworn Statement | Payment Prior to Work Completed | Delta 5w/7 vs. 11.19.2023 Prop | 11.19.2023 Proposal | 11.19.2023 Street Memo | 11.19.2021 Proposal Completed | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1000 | Ashwork | Building Permit | $ 8,373.00 | 100% | $ 8,873.00 | $ 8,873.00 | | $ 1,127.00 | $ 7,500.00 | $ 2,500.00 | $ 30,000.00 | |
| 1000 | Ashwork | General Conditions | $ 63,388.00 | 15% | $ 9,498.20 | $ 42,493.59 | $ 32,956.59 | $ (10,000.00) | $ 42,300.00 | $ 10,188.00 | $ 53,388.00 | Includes safety railing |
| 2000/2500 | Ashwork | Gunning/Mopping/Cutting & Removal | $ 33,840.00 | 100% | $ 33,840.00 | $ 33,840.00 | | $ (25,740.00) | $ 8,100.00 | | $ 8,100.00 | |
| 3000 | Dycort | Concrete | $ 16,855.00 | 100% | $ 16,855.00 | $ 16,855.00 | | $ 14,279.00 | $ 31,104.00 | | $ 31,104.00 | |
| 5000 | Lee Cont. | Structural/Steel Mezz | $ 180,035.00 | 90% | $ 162,031.50 | $ 180,035.00 | $ 18,003.50 | $ 33,286.00 | $ 24,122.00 | $ 189,189.00 | $ 213,311.00 | |
| 5001 | Not Awarded | Ornamental Metals | $ 42,487.41 | 0% | $ - | $ - | | $ 24,425.59 | $ 66,917.00 | | $ 66,917.00 | |
| 6000 | Not Awarded | Millwork | $ 34,776.00 | 0% | $ - | $ - | | $ 3,024.00 | $ 37,800.00 | | $ 37,800.00 | |
| 6000 | Not Awarded | Finish Carpentry | $ 16,567.26 | 0% | $ - | $ - | | $ (16,567.26) | | | | |
| 7000 | Not Awarded | Roofing | $ 1,397.20 | 0% | $ - | $ - | | $ 172.20 | $ 2,160.00 | | $ 2,160.00 | |
| 8000 | Not Awarded | Glass | $ 521,341.52 | 0% | $ - | $ - | | $ 45,334.08 | $ 566,676.00 | | $ 566,676.00 | |
| 9000 | Coporen | Wall & Door Installation | $ 62,247.00 | 25% | $ 15,561.75 | $ 29,186.00 | $ 13,024.25 | $ 18,008.00 | $ 80,255.00 | | $ 80,255.00 | |
| 9000 | Not Awarded | Fixture Wall | $ 34,500.00 | 0% | $ - | $ - | | $ 3,000.69 | $ 37,500.00 | | $ 37,500.00 | |
| 9500 | Not Awarded | Finishes | $ 122,120.40 | 0% | $ - | $ - | | $ 10,617.89 | $ 132,720.00 | | $ 132,720.00 | |
| 10000 | Not Awarded | Appl. / lift Access / Car Lifts | $ 109,530.69 | 0% | $ - | $ - | | $ 11,224.40 | $ 120,555.00 | | $ 130,555.00 | |
| 15000 | Not Awarded | Fire Suppression | $ 19,116.92 | 0% | $ - | $ - | | $ 1,664.48 | $ 20,801.00 | | $ 20,801.00 | |
| 15000 | Not Awarded | Plumbing | $ 89,344.52 | 0% | $ - | $ - | | $ 6,886.45 | $ 87,331.00 | | $ 87,331.00 | |
| 15500 | Not Awarded | HVAC | $ 14,933.68 | 0% | $ - | $ - | | $ 1,300.32 | $ 16,254.00 | | $ 16,254.00 | |
| 16000 | Not Awarded | Electrical | $ 258,336.00 | 0% | $ - | $ - | | $ 22,464.00 | $ 280,800.00 | | $ 280,800.00 | |
| 16000 | Not Awarded | Electrical Audio - Video | $ 65,420.29 | 0% | $ - | $ - | | $ 5,355.80 | $ 66,500.00 | | $ 66,500.00 | |
| 20000 | Ashwork | CM Fee | $ 164,916.55 | 15% | $ 24,742.54 | $ 164,916.55 | $ 140,195.41 | $ 146,767.55 | $ 146,767.55 | $ 13,169.00 | $ 164,936.55 | |
| 20000 | Mt Concourse | Developer Fee | $ 131,850.79 | 0% | $ - | $ - | | $ (131,850.79) | | | | |
| 22000 | Not Awarded | Contingency | $ 67,916.00 | 0% | $ - | $ 17,916.00 | $ 17,916.00 | $ (57,316.00) | $ 50,000.00 | | $ 50,000.00 | |
| 23000 | Lee Cont. | EWA-1 | $ 10,655.00 | 100% | $ 10,655.00 | $ 10,655.00 | | $ 10,655.00 | | | $ 10,655.00 | |
| | | Totals: | $ 2,058,153.35 | 14% | $ 282,032.99 | $ 504,759.45 | $ 222,716.46 | $ 0.00 | $ 1,488,177.05 | $ 219,974.00 | $ 2,058,153.35 | |

**Corrective Work, Delay, Coordination**

| No. | Description | Amount |
|---|---|---|
| No. 01 | Reframe Wall Stud to Correct Dimensions for Millwork | $ 2,362.00 |
| No. 02 | Reframe Upstairs Walls and Re-Install Ceilings at Restroom to Accommodate In-Wall Plumbing [not coordinated with MEP] | $ 4,724.64 |
| No. 03 | Reframe Wall Stud for Deer Frames, Installed Out of Plumb. | $ 1,574.88 |
| No. 04 | Repair Damage to Existing Materials/Plywood Deck from Prior Trades in Suite | $ 1,574.88 |
| No. 05 | Structural Steel Issues Addressed After Engineering Coordination and Shop Drawing / Submittal Coordination With Other Associated Trades | $ 72,635.00 |
| No. 06 | Extended Time to Address Issues Related to Items No. 01-05 Above, 7 Weeks @ $15,500.00/week [Personnel & General Conditions] | $ 45,500.00 |
| | Totals: | $ 128,771.40 |

RONALD A. DENEWETH
CHRIS M. PARFITT
MARK D. SASSAK
ANTHONY VITTIGLIO II*
MATTHEW C. HERSTEIN**
ALEXANDER CHOI
JACOB A. KAHN***

LAW OFFICES

# DENEWETH, VITTIGLIO & SASSAK

PROFESSIONAL CORPORATION
1175 WEST LONG LAKE ROAD, SUITE 202
TROY, MICHIGAN 48098-4437
TELEPHONE 248-290-0400
FACSIMILE 248-290-0415
WWW.MICHIGANCONSTRUCTIONLAW.NET

OF COUNSEL
EDWARD A. RYDER

ALSO ADMITTED IN:
*FLORIDA
**NORTH CAROLINA
***CALIFORNIA

August 5, 2022

mdevanslaw@aol.com
mevans@markdevanslaw.com
**AND FIRST CLASS MAIL**

Mr. Mark Evans
Mark D. Evans, PC
2232 South Main St., #272
Ann Arbor, MI 48103

      Re:    Ashmark Construction, M1 Concourse -- Unit 197
           Our File No.:  5758.2

Dear Mark:

      It has been a long time since we had any matters together.  We represent Richard Penington and Julie Ann Higgins (Clients), the owners of the above-referenced Project.

      We will be taking over for Jim Case who sent the Notice of Termination to your client, Ashmark Construction (Ashmark), on April 12, 2022.

      Our Clients have engaged Kasco, LLC to complete the Project.  The Clients have undertaken an investigation into evaluating the various aspects of Ashmark's work.  We have determined that Ashmark has performed about $310,000.00 worth of work at the Project. Ashmark has been paid $504,641.00, which would indicate that Ashmark is significantly overpaid.

      In the course of its investigation, our Clients have also learned that Ashmark's structural steel contractor, Lee Contracting, has performed work having a claimed value of $268,289.00. However, Lee contends that Ashmark has only paid it $92,639.45.  This fact alone is quite distressing to our Clients and would indicate a violation of the Michigan Builder's Trust Fund Act by Ashmark and its principal, Martin Renel.

      Our Clients would like to resolve this matter and move on; however, if this matter cannot be resolved to their reasonable satisfaction, we have been instructed to pursue claims against Ashmark and Mr. Renel.

EXHIBIT
**21**

To move toward a resolution, I would request that you provide me with a copy of Ashmark's Subcontracts and/or supply agreements with all of its subcontractors and suppliers. We would also request a fully completed current sworn statement on the form provided under the Michigan Construction Lien Act along with lien waivers supporting all of Ashmark's payments to its subcontractors and suppliers.

We look forward to your promptly receiving the requested documents.

Very truly yours,

DENEWETH, VITTIGLIO & SASSAK, P.C.

Ronald A. Deneweth
Direct No.: (248) 290-0401
rdeneweth@dvs-law.com

RAD/lv

cc:    Richard Penington, richard.a.penington@gmail.com

5759.2/072922 Evans letter

RONALD A. DENEWETH
CHRIS M. PARFITT
MARK D. SASSAK
ANTHONY VITTIGLIO II*
MATTHEW C. HERSTEIN**
ALEXANDER CHOI
JACOB A. KAHN***

LAW OFFICES

# DENEWETH, VITTIGLIO & SASSAK

PROFESSIONAL CORPORATION
1175 WEST LONG LAKE ROAD, SUITE 202
TROY, MICHIGAN 48098-4437
TELEPHONE 248-290-0400
FACSIMILE 248-290-0415
WWW.MICHIGANCONSTRUCTIONLAW.NET

OF COUNSEL
EDWARD A. RYDER

ALSO ADMITTED IN:
*FLORIDA
**NORTH CAROLINA
***CALIFORNIA

September 29, 2022

mdevanslaw@aol.com
mevans@markdevanslaw.com

Mr. Mark Evans
Mark D. Evans, PC
2232 South Main St., #272
Ann Arbor, MI 48103

      Re:    Ashmark Construction, M1 Concourse – Unit 197
            Our File No.:  5758.2

<u>**FOR SETTLEMENT PURPOSES ONLY**</u>

Dear Mark:

This will acknowledge receipt of your letter of September 22, 2022. I will address the issues in which you have presented them in your September 22, 2022 email.

What Ashmark might characterize as an "inadvertent error" in its Sworn Statement regarding the amount of Lee Industrial Contracting's ("Lee") subcontract and the amount paid to it is merely indicative of the misstatements made to Richard Penington ("Penington") and the lack of integrity that your client displayed in dealing with Penington. How can your client innocently overstate the amount of its subcontract with Lee and the amount paid to Lee by over $17,000.00? It is this very type of lack of fair dealing and misinformation that led Penington to terminate Ashmark's contract for cause on April 12, 2022.

Similarly, your client's lack of truthfulness with regard to Bulletin 6 only supports Penington's decision to terminate Ashmark for cause.

Contrary to your assertion that the Bulletin 6 work was not authorized by Ashmark or completed under Ashmark's watch, on February 8, 2022 an email exchange took place between Craig Burke, Project Manager for Lee, and Martin Renel of Ashmark. Mr. Burke, in directing his comments to Rachel Noel of Lee stated in an email coped to Mr. Renel:

> I got a verbal to proceed from Martin [Renel] on the Bulletin 6 cost
> that was sent, latest pricing from Ryan.
>
> Martin—if you could confirm via this email for Rachel she will most
> likely award it to me so I can move forward.


EXHIBIT
22

**\*\*FOR SETTLEMENT PURPOSES ONLY\*\***

On that same date, Martin Renel of Ashmark stated with regard to Bulletin 6:

Approved. Per our conversation to proceed.

I can send you this email exchange if your client has not already provided it to you. The exchange clearly reinforces that Penington never approved Bulletin 6, yet, Ashmark authorized Lee to proceed with that work and it was partially completed under Ashmark's watch prior to its termination. Clearly, Ashmark granted approval to Lee to perform the Bulletin 6 extra work without receiving authorization from Penington and lied to Penington about the approval. That is further support of termination for cause.

Ashmark's own Sworn Statement clearly demonstrates the basis for Ashmark's termination. Now that Ashmark has acknowledged that it only paid Lee $180,035.00, Ashmark's Sworn Statement demonstrates that it only performed $226,046.00 in work on the Project, yet has billed Penington (and been paid by Penington) in excess of $500,000.00. Ashmark kept over half of the contract proceeds paid to it for itself. Ashmark grossly overbilled Penington (and was paid) for work that it had not performed.

Although Penington did not have the benefit of a Sworn Statement, he certainly suspected malfeasances on the part of Ashmark. On March 21, 2022, Penington sent Martin Renel an email outlining his concerns as follows:

  a. I am very disappointed about missing the upcoming race season at the M1 track due to the delay in this project, with the original completion date of April 2022.
  b. I am also very disappointed in the complete disregard for the budget I gave the team.
  c. Your proposal indicated that Ashmark was making 9% as a general contractor. I was shocked to find out that Ashmark was marking up other vendors' invoices by 10%
  d. These excessive Ashmark expenses lead me to believe I am being taken advantage of.
  e. At this time, I have lost confidence in Ashmark to complete the construction of unit 197.
  f. I am looking for your help restoring my confidence in Ashmark and addressing the concerns outlined above.
  g. I am asking that you revisit the markup of the vendor invoices and provide transparent information on the invoice and your markup with corresponding support for the markup.

When Renel did not adequately respond to Penington's concerns and after Penington had paid Ashmark over $500,000.00 for well less than $250,000.00 worth of work, can there be any doubt why Penington chose to terminate Ashmark for cause via Jim Case's letter of April 12, 2022? Ashmark had from March 21, 2022 to April 12, 2022 to cure its defaults and clearly chose otherwise.

I have been in this business for over 45 years, and I have yet to see a general contractor attempt to justify billing and collecting 100% of its construction management fees and 2/3 of its